## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DMARCUS JONES,

               Plaintiff,                                    No. 10-cv-11872
                                                  Hon. Gerald E. Rosen

vs.

SCOTT ISAACSON,
JEFFREY MASSERANG, and
ROBERT HORKLOCKER,
               Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART
## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

### I.    INTRODUCTION

On May 8, 2010, Plaintiff Dmarcus Jones filed a complaint against Defendants Scott Isaacson, Jeffrey Masserang, and Robert Horlocker, all Warren Police Officers. Plaintiff asserts a 42 U.S.C. §1983 claim, for excessive force in violation of the Fourth Amendment, based on the events surrounding his arrest on May 26, 2009.  He seeks $75,000 from each defendant, plus whatever the court may find beyond that amount, including all compensatory, special, exemplary, and/or punitive damages allowed by statute, case law, and court rules, as well as all costs of litigation, including attorney fees.

Defendants have filed a motion for summary judgment, to which Plaintiff has responded.  Having reviewed and considered the parties' respective motions, responses, and supporting evidence, the Court has determined that oral argument is not necessary.

Pursuant to Local Rule 7.1(f)(2), this matter will be decided on the briefs.  This Opinion and Order sets forth the Court's ruling.

## II.    FACTS

On May 26, 2009, Defendant Warren Police Officer Scott Isaacson observed Plaintiff Dmarcus Jones traveling northbound on the M-53/Van Dyke Freeway in a 1998 white Pontiac Grand Am.  Isaacson noted that Plaintiff's front windows were tinted in violation of M.C.L. 257.709, and he attempted to initiate a traffic stop by activating his overhead lights.  Plaintiff continued northbound with his hazard lights activated. Isaacson continued to follow the car, activating his police siren on several occasions, and Plaintiff still did not stop.  Isaacson notified the Warren Police dispatch of the unfolding events.

At the intersection of M-53 and Stephens, Centerline Police Cpl. Haugh pulled alongside Isaacson's car with all of his emergency equipment activated.  Plaintiff continued northbound, made an abrupt lane change near M-53 and Dale, and then made a U-turn.  At approximately 10 Mile and M-53, Defendants Warren Police Officers Robert Horlocker and Jeffrey Masserang, traveling together in a Warren Police cruiser, joined Isaacson in his pursuit of Plaintiff.  Plaintiff turned on Timken, pulling his vehicle over to the curb.  Plaintiff then rolled down the driver's side window and placed his hands, arms, and head outside of the window.

Both parties agree on the facts outlined above.  It is what occurred after Plaintiff pulled over that is in dispute.  The key difference between the two stories is the element of resistance.  The Defendant officers maintain that Plaintiff resisted arrest, while

2

Plaintiff claims that he offered no resistance.  There is a video tape from the police camera in Isaacson's car, but it is not particularly helpful in determining whether or not Plaintiff resisted arrest that night, because the camera view of Plaintiff is inadvertently obstructed by the multiple officers at the scene.

According to the Defendant officers, they ordered Plaintiff to exit the vehicle but Plaintiff failed to comply.  The officers rapidly approached the vehicle.  The video shows that Masserang attempted to open the driver's door but it was locked.  The officers proceeded to remove Plaintiff through the driver's window.  They moved Plaintiff immediately to the ground and attempted to handcuff him.  The officers claim that Plaintiff resisted by concealing his arms and hands beneath his body, making them believe that he was attempting to reach for a weapon.  The officers ordered Plaintiff to relinquish his hands and to "stop resisting."  DVD: Tape # 5582 (Warren Police Department 2009).  When Plaintiff allegedly refused to comply, Isaacson administered a one-second burst of OC spray (pepper spray) to Plaintiff's face, allowing Horlocker and Masserang to secure Plaintiff's hands and apply the handcuffs.  Plaintiff was then placed in the back seat of Masserang and Horlocker's police vehicle without further incident.

According to Plaintiff, when he put his hands, arms, and head out of the window, he also yelled, "I am not resisting, I am not resisting."  (Pl.'s Answer to Interrog. 8.) Without any warning to get out of the car, the officers grabbed Plaintiff by the arms and pulled him through the driver's window.  The officers then threw Plaintiff to the ground facedown, and one officer kept a knee on his back and another kneeled to the side, pressing Plaintiff's face into the pavement.  Plaintiff also claims that the officers punched

3

and kicked him while he was on the ground.  After Plaintiff was handcuffed, Isaacson

allegedly discharged an entire can of pepper spray into Plaintiff's face, and then threw the

canister at Plaintiff, striking him in the face.

### III.   ANALYSIS

### A.  Standards Governing Defendants' Motion

Under the pertinent Federal Rule, summary judgment is proper "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As the Supreme Court has

explained, "the plain language of [Rule 56(a)] mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  *Celotex v. Catrett*, 477

U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in

the light most favorable to the nonmoving party.  *Pack v. Damon Corp.*, 434 F.3d 810,

813 (6th Cir. 2006).  The non-moving party may not issue a general denial, but "must

support the assertion by citing to particular parts of materials in the record."  Fed. R. Civ.

P. 56(c)(1)(a).  Moreover, any supporting or opposing affidavits "must be made on

personal knowledge, set out facts that would be admissible in evidence, and show that the

affiant… is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Finally,

"the mere existence of a scintilla of evidence that supports the nonmoving party's claims

is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal

quotation marks and citation omitted).

## B.  Excessive Force

Claims that law enforcement used excessive force in the course of an arrest should

be evaluated under the Fourth Amendment and its reasonableness standard. *Graham v.*

*Connor*, 490 U.S. 386, 395 (1989).  In applying this standard, the specific facts of each

case should be evaluated, including "the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.  Each case

should be "viewed from the perspective of a reasonable officer on the scene and not with

the 20/20 vision of hindsight." *Id.*  This Court must ask whether, with all inferences

drawn in favor of Plaintiff, the officers' actions were objectively reasonable. *See Pack*,

434 F.3d at 813.

In applying this reasonableness standard, it is helpful to analyze the event in

segments. *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002).  This case can be divided

into two segments: the removal of Plaintiff from his car through the driver's window, and

what happened to Plaintiff once he was on the ground.

### 1.  Removal From the Car

When analyzed using the three factors outlined in *Graham*, the manner in which

the officers removed Plaintiff from his vehicle was objectively reasonable.  This case is

similar to *Dunn v. Matatali*, 549 F.3d 348 (6th Cir. 2008), in which the officer attempted

to initiate a traffic stop for almost two minutes before the vehicle stopped.  In that case,

two officers forcibly removed the plaintiff from his vehicle, even after the plaintiff stated that it was his seatbelt that was preventing him from exiting, and said "okay" and "I'm coming, I'm coming." *Id.* at 352. The Court ruled that the officers in that situation were acting reasonably in response to a perceived physical threat. *Id.* at 354.

Here, the officers forcibly removed Plaintiff from his vehicle and moved him to the ground in response to a perceived threat. Although the crime at issue was originally a minor traffic violation, it had escalated to a potentially dangerous situation. Plaintiff refused to stop for the police for almost four minutes, and used tactical maneuvers such as changing lanes and making U-turns. Although his speed did not greatly exceed the speed limit, the Court finds Plaintiff's continued refusal to stop sufficient to make a reasonable officer suspicious that Plaintiff posed a threat. Even if Plaintiff were shouting "I am not resisting," as he claims, it is difficult for an officer to decide when to trust that a person who was initially resisting had finally given up. *See Dunn*, 549 F.3d at 354. A reasonable officer may have been wary of whether Plaintiff's resistance had actually ended.

Plaintiff argues that removing him from the car in such a manner is inconsistent with how the officers were trained. In the heat of the moment, however, routine techniques learned in training, may, of necessity, be subordinated in concern for one's own safety and the safety of fellow officers. At the time, it may have seemed reasonable to remove Plaintiff in such a manner, even if it contradicted training because, although hindsight is 20/20, the Court must look at the totality of the circumstances including Plaintiff's unsafe and evasive driving. *Graham*, 490 U.S. at 396.

6

Even taking the facts as Plaintiff relays them, the method of removing Plaintiff from the car through the window is still objectively reasonable given the totality of the circumstances. Therefore, summary judgment is granted in favor of Defendants as it pertains to the amount of force used to remove Plaintiff from the vehicle.

### 2.  Events on the Ground

Once on the ground, Plaintiff claims that he offered no resistance, but nevertheless, the officers shoved his face into the ground and placed their knees on his back and by his head in order to keep him still. Once he was handcuffed, Plaintiff claims that Defendant Isaacson discharged an entire canister of pepper spray into Plaintiff's face and threw the canister at his head. Plaintiff also claims that he was punched and kicked. By taking the facts in the light most favorable to the non-moving party, pepper spraying Plaintiff does constitute excessive force. *See Champion v. Outlook Nashville Inc.*, 380 F.3d 893, 903 (6th Cir. 2004). In analyzing the use of a chemical weapon such as pepper spray, the Court uses the same analysis as in traditional cases of force, including looking at the conduct of the arrestee and the officer's reasonable perception of the situation. *See Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994).

By the time the officers got Plaintiff to the ground, the risk to officer safety had significantly decreased. There was no longer the threat of a weapon, and three officers were holding Plaintiff down, with more surrounding them. There was no longer the threat of immediate danger to the officers. A reasonable officer should have known that shoving a non-resisting arrestee's face into the ground, placing knees on his back and throwing any punches or kicks while holding an arrestee on the ground would have

7

constituted excessive force. *See Phelps*, 286 F.3d at 301. Discharging pepper spray on a compliant arrestee would similarly constitute excessive force. *See Adams*, 31 F.3d at 386. If Plaintiff was not resisting, as he claims he was not, then there was no need to discharge the pepper spray. Certainly, if Isaacson did empty his canister into Plaintiff's face and threw it at him, those actions would be excessive.

The officers contradict Plaintiff's version of the events, claiming that Plaintiff was reaching under his body and resisting arrest. In the police video, the officers are yelling "stop resisting" as they take Plaintiff to the ground. DVD: Tape # 5582 (Warren Police Department 2009). In the video itself, it is difficult to see the exact order of the events, and whether Plaintiff was handcuffed before the pepper spray was discharged or after. If he was in fact resisting, then the discharging of the pepper spray may not constitute excessive force. *See Adams*, 31 F.3d at 386.

Each party has submitted sworn statements to support their version of the arrest. When faced with evidence supporting two different versions of the same event, the judge may not make credibility determinations or weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). All facts must be viewed in favor of the non-moving party, and therefore, it is Plaintiff's version of events that determine whether or not an issue of fact exists as to whether he was resisting arrest. Based on his version, excessive force may have occurred if his face was shoved into the ground with knees placed on his back, he was beaten, or if the pepper spray was discharged after he was under the control of the Defendant officers. *See Phelps*, 286 F.3d at 301; *Champion*, 380 F.3d at 903.

8

Assuming the facts as Plaintiff alleges them are correct, the officers may still be entitled to qualified immunity defense.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court in *Saucier* laid out a two-step process for analyzing qualified immunity: "(1) a court must decide whether the facts alleged by the plaintiff point to a violation of a constitutional right, and (2) if so, was the right clearly established at the time of the defendant's alleged misconduct."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Although the *Saucier* analysis was held to be flexible in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that the analysis is still useful in many circumstances.  *Jefferson v. Lewis*, 594 F.3d 454, 460 (6th Cir. 2010).  This Court finds the *Saucier* two-step analysis helpful in the present matter.

Here, Plaintiff's allegations that the officers beat him and emptied a can of pepper spray on him while he offered no resistance would be a violation of a constitutional right, specifically the Fourth Amendment.  Therefore, the defense of qualified immunity depends on whether or not that right was clearly established at the time of Defendants' actions.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 201.  "An action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from general reasoning that the court employs."  *Feathers v. Aey*, 319 F.3d

9

843, 848 (6th Cir. 2003).  In this case, the right of a non-resisting arrestee not to be beaten or pepper sprayed is clearly established, and for the reasons stated below the Court finds an issue of fact remains as to whether Plaintiff was resisting.

If an arrestee has submitted to police authority and is not resisting, the need for the application of force is nonexistent.  *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988).  The Sixth Circuit has generally held that the use of pepper spray is excessive force when the arrestee "surrenders, is secured, and is not acting violently, and there is no threat to the officers of anyone else."  *Champion*, 380 F.3d at 903.  Plaintiff alleges in his answer to Defendants' interrogatories that he was not resisting in any way.  In fact, he states that he yelled "I am not resisting."  Pl.'s Answer to Interrog. 8.  Accepting the facts based on Plaintiff's sworn affidavit, and given the clear case law about the proper use of pepper spray, the officers should have known that Plaintiff had a right not to be beaten or pepper sprayed if he was not resisting.  Therefore, qualified immunity is not an applicable defense in this case.

Based on conflicting sworn statements and inconclusive video evidence, the Court finds that there is an issue of fact as to whether or not Plaintiff was resisting on the ground when the officers allegedly shoved his face into the ground, placed knees on his back, beat him, and when Defendant Isaacson used pepper spray, and therefore, summary judgment is denied on this issue.

## C.  Failure to Intervene

Plaintiff also claims that Defendant Horlocker is liable for his failure to intervene before Isaacson discharged his pepper spray.[1] "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Although the words "spray him" were said several times during the video, the entire arrest took place in a matter of seconds, which the Court finds was not enough time for Horlocker to intervene and stop Isaacson from using pepper spray. *See Bletz v. Gribble*, 641 F.3d 743 (6th Cir. 2011) (holding that a police officer cannot be liable if there is no realistic opportunity for him to prevent the act). Therefore, Horlocker is not liable for his failure to intervene and is appropriately dismissed from this action.

## IV.    CONCLUSION

For all the reasons set forth above in this opinion and order, and the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment [Dkt. # 18] is GRANTED IN PART and DENIED IN PART.

---

[1] This alleged failure to intervene to prevent the use of pepper spray is the only time Officer Horlocker is mentioned in the complaint. (Compl. at 16.)

IT IS FURTHER ORDERED that Plaintiff's complaint against Defendant

Horlocker is DISMISSED.  The case shall proceed against the remaining Defendants

Isaacson and Masserang.


Dated:  August 3, 2011                    s/Gerald E. Rosen
                                          Gerald E. Rosen
                                          United States District Court, Chief Judge




I hereby certify that a copy of the foregoing document was served upon counsel of record on
August 3, 2011, by electronic and/or ordinary mail.

                              s/Ruth A. Gunther
                              Case Manager
                              (313) 234-5137